**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**WAIKOLOA VILLAGE LOFTS WEST, LLC., *ET AL.*,**<br><br>**DEBTORS.**[1] | **CASE NO. 26-20761-JRS**<br><br>**CHAPTER 11**<br><br>**WAIPAHU PROPERTIES, LLC**<br>**WAIPAHU, LLC**<br>**WILLOW PLAZA, LLC**<br><br>**JOINTLY ADMINISTERED** |

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that Debtor, MP Elk Grove, LLC, has filed its ***Motion for Order (A) Authorizing the Sale of Certain Assets Free and Clear of All Liens, Claims, and Encumbrances and (B) Granting Related Relief*** (the "**Motion**") and related papers with the Court seeking an order authorizing the sale of substantially all assets of Debtor free and clear of all liens, claims, and encumbrances, and granting related relief.

**PLEASE TAKE FURTHER NOTICE** that the Court will a hearing on the Motion at **10:30 a.m.** on **November 17, 2026** in **Courtroom 1404, Richard B. Russell Federal Building, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which calendar call may be attended in person or via the Court's Virtual Hearing Room. Except as explained in the hearing procedures on Judge Sacca's Chambers webpage, any matter held ready at the calendar call for the Court to hear shall be heard later that day in person at either 11 a.m. or 1 p.m. as mutually requested by the parties in the Courtroom listed above. Please check the "Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, which includes a link to Judge Sacca's Chambers webpage, for more information and instructions on how to participate in Court hearings. You may also review the "Hearing Information" tab on Judge Sacca's Chambers' webpage for further information about the procedures for the hearing. If the parties do not mutually agree to have the matter heard in person at 11 a.m. (or such other time agreed to by the parties and approved by the Court, such as 11:30 a.m. that day), the matter will be heard in person at 1 p.m. that day.

---

[1] The non-operating Debtors are **5425 PAU A LAKA, LLC, FLETCHER K, LLC, GARY L. PINKSTON, HAWAII REAL ESTATE DEVELOPMENT, LLC, KUKUIULA VISTAS, LLC, MP ELK GROVE, LLC, MP ELKO II, LLC, MP KAUAI HH DEVELOPMENT FUND, LLC, MP KAUAI QOZ FUND, LLC, MP MODESTO, LLC, TC CLOVIS, LLC, THE GARY & JANICE PINKSTON FAMILY TRUST, WAIKOLOA VILLAGE HOTEL CWS, LLC, WAIKOLOA VILLAGE HOTEL HIE, LLC,** and **WAIKOLOA VILLAGE LOFTS SOUTH, LLC.**

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Dated: October 23, 2026

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy, Georgia Bar No. 370092
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**WAIKOLOA VILLAGE LOFTS WEST, LLC., *ET AL.*,**<br><br>**DEBTORS.**[2] | **CASE NO. 26-20761-JRS**<br><br>**CHAPTER 11**<br><br>**WAIPAHU PROPERTIES, LLC**<br>**WAIPAHU, LLC**<br>**WILLOW PLAZA, LLC**<br><br>**JOINTLY ADMINISTERED** |

**MOTION FOR ORDER (A) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF**

MP Elk Grove, LLC ("**Debtor**"), by and through undersigned counsel, files this motion (the "**Motion**"), pursuant to §§ 105, 363, and 365 of the Bankruptcy Code and Rules 6004, 6006, 7052, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking an order: authorizing Debtor to sell the assets described herein (the "**Real Property**" and "**Intangibles**") free and clear of all liens, claims, and encumbrances and granting related relief. In support of this Motion, Debtor respectfully shows the Court as follows:

[2] The non-operating Debtors are **5425 PAU A LAKA, LLC, FLETCHER K, LLC, GARY L. PINKSTON, HAWAII REAL ESTATE DEVELOPMENT, LLC, KUKUIULA VISTAS, LLC, MP ELK GROVE, LLC, MP ELKO II, LLC, MP KAUAI HH DEVELOPMENT FUND, LLC, MP KAUAI QOZ FUND, LLC, MP MODESTO, LLC, TC CLOVIS, LLC, THE GARY & JANICE PINKSTON FAMILY TRUST, WAIKOLOA VILLAGE HOTEL CWS, LLC, WAIKOLOA VILLAGE HOTEL HIE, LLC,** and **WAIKOLOA VILLAGE LOFTS SOUTH, LLC.**

## BACKGROUND

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Debtor consents to the entry of final orders and judgments by the Bankruptcy Court.

2. This Motion is brought pursuant to § 105 of the Bankruptcy Code, which grants the Court broad equitable powers to carry out the provisions of the Bankruptcy Code. The Motion is also brought under §§ 363(b) and 363(c) of the Bankruptcy Code, which authorize the sale of estate property after notice and hearing.

3. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 14, 2026 (the "**Petition Date**"). Since the Petition Date, Debtor has continued in possession of its property and has operated and managed its affairs as a debtor-in-possession pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

4. Debtor owns undeveloped Real Property located at Triangle Point, 9430 Mosher Road, Elk Grove, CA 95624, having Tax IDs # 134.0182.011.000 through 134.182.019.0000, described as approximately 63.14 acres of land within Sacramento County, California, together with the Intangibles, including all permits, licenses, plans, specifications, and certificates of completion related to the Real Property (the Real Property and Intangibles collectively are referred to as the "**Property**"). The Property is subject to liens and encumbrances described herein, which valid liens and encumbrances will be satisfied from the sale proceeds.

5. The Property is Debtor's primary asset. The Real Property is intended for the development of commercial retailers or residential projects.

## Liens on the Property

6. Bank of America ("**BofA**") holds a first priority lien in and on the Property by virtue of that certain Loan Agreement dated July 27, 2022 executed by Debtor and BofA in the principal sum of $10,700,000 (the "**Loan**"), as amended from time to time, (the "**Loan Agreement**").

7. The Loan is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated July 27, 2022 and recorded on August 1, 2022 in the official records of Sacramento County, California as to the Property (the "**Deed**").

8. BofA filed Proof of Claim No. 2 on June 29, 2026 asserting that, as of the Petition Date, the outstanding balance on the Loan is $11,774,625.45.

9. A. Teichert & Son, Inc. d/b//a Teichert Construction filed Proof of Claim No. 14 asserting a secured claim in the amount of $2,329,157.00 based upon a mechanic's lien recorded in the Superior Court of Sacramento County, California with Case No. 26CV009892 (the "**Teichert Claim**").

## THE PROPOSED SALE

9. Debtor entered into a Purchase and Sale Agreement and Joint Escrow Instructions (the "**Agreement**") with Kamilos Companies, LLC, a California limited liability company, (the "**Buyer**") for the purchase of the Real Property and the Intangibles for the original purchase price of Seventeen Million Dollars ($17,000,000). The purchase price is reduced to Sixteen Million One Hundred Thirteen Thousand Four Hundred Twenty-One Dollars and 62/100 ($16,313,421.62) (the "**Purchase Price**") pursuant to the Ninth Amendment defined below.

10. Under the Agreement, the Buyer delivered a Ten Thousand Dollar ($10,000) earnest money deposit to the escrow holder, Stewart Title of California (the "**Escrow Holder**").

11. The closing of the sale of the Property was scheduled for January 31, 2026 (the "**Closing Date**").

12. Pursuant to the terms of a First Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to February 15, 2026 and original purchase price was increased to Nineteen Million One Hundred Thirteen Thousand Four Hundred Twenty-One Dollars and 62/100 ($19,313,421.62).

13. Pursuant to the terms of a Second Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to March 6, 2026.

14. Pursuant to the terms of a Third Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to March 20, 2026.

15. Pursuant to the terms of a Fourth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to April 15, 2026.

16. Pursuant to the terms of a Fifth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to April 23, 2026.

17. Pursuant to the terms of a Sixth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to May 8, 2026.

18. On May 7, 2026, pursuant to the terms of a Seventh Amendment to Purchase and Sale Agreement and Joint Escrow Instructions, the Closing Date was postponed to May 29, 2026.

19. The Eighth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions was effective retroactively to May 29, 2026 and set the Closing date to on or before October 23, 2026.

20. The Ninth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions reduced the purchase price to Sixteen Million One Hundred Thirteen Thousand Four Hundred Twenty-One Dollars and 62/100 ($16,313,421.62) and set the Closing date to on or before October 23, 2026.

9. The Tenth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions set the Closing date to on or before December 30, 2026.

10. A true and correct copy of the Agreement and the ten amendments are attached hereto as **Exhibit A**.

11. The Buyer sold the Real Property to Debtor in 2020. The Buyer was the developer of the Real Property. After the sale, the Buyer provided Debtor with real estate development services for the Real Property. The Buyer has access to all information and documents relating to the Real Property and Intangibles. The Buyer has completed all due diligence related to the purchase of the Property.

## PARCEL PURCHASE AGREEMENTS

12. Before the Petition Date, Debtor entered into six agreements to sell portions of the Property to third parties (collectively, the "**Parcel Purchase Agreements**"). None of the Parcel Purchase Agreements has closed, and title to the Property remains vested in Debtor. The Parcel Purchase Agreements are:

| **Parcel(s)** | **Purchaser** | **Agreement** | **Purchase Price** |
|---|---|---|---|
| 1 and 7 | Embarcadero Group, LLC | Agreement of Purchase and Sale and Joint Escrow Instructions dated February 25, 2021, as amended by three amendments | $1,300,000.00 (Parcel 7); Parcel 1 at $2.70 per gross square foot, at purchaser's election |
| 3 | California Gold Development Corporation | Agreement of Purchase and Sale and Joint Escrow Instructions dated September 4, 2020, as amended October 8, 2020 | $975,000.00 |

| Parcel(s) | Purchaser | Agreement | Purchase Price |
|---|---|---|---|
| 4 | AU Energy, LLC (assignee of Vintners Distributors, Inc.) | Agreement of Purchase and Sale and Joint Escrow Instructions dated June 21, 2021, as assigned and amended by eight amendments | $1,600,000.00 |
| 5 | AU Energy, LLC | Agreement of Purchase and Sale and Joint Escrow Instructions dated June 21, 2021, as amended by eight amendments | $3,643,296.00, subject to adjustment |
| 6 | Omair Nasim | Agreement of Purchase and Sale and Joint Escrow Instructions dated June 14, 2021, as amended | $730,000.00 |
| 8 | KB Home Sacramento Inc. | Agreement for Purchase and Sale of Real Property and Escrow Instructions dated August 10, 2023, as amended by ten amendments (the "**KB Home Agreement**") | $10,512,000.00, subject to adjustment by lot count |

13. Each Parcel Purchase Agreement covers a portion of the Property that Debtor proposes to sell to the Buyer under the Agreement. Debtor cannot convey the Property to the Buyer free and clear of all interests while remaining bound to convey portions of the same Property to other purchasers. The Parcel Purchase Agreements also require Debtor, at its own cost, to complete grading, roadway, utility, and mapping work that Debtor lacks the capital to perform.

14. Contemporaneously with this Motion, Debtor is filing five motions under § 365(a) of the Bankruptcy Code to reject each of the Parcel Purchase Agreements other than the KB Home Agreement (collectively, the "**Rejection Motions**").

15. Also contemporaneously with this Motion, Debtor is filing a motion under §§ 363 and 365 of the Bankruptcy Code to assume the KB Home Agreement and assign it to the Buyer, effective upon the closing of the sale (the "**Assignment Motion**"). Under the Assignment Motion, the Buyer would take title to Parcel 8 subject to the KB Home Agreement and become the seller to KB Home Sacramento Inc. [The Buyer has agreed to accept the assignment.] Debtor requests that the Rejection Motions and the Assignment Motion be heard together with this Motion and that orders on them be entered before or concurrently with the order approving the sale.

16. None of the purchasers under the Parcel Purchase Agreements is in possession of any portion of the Property. Except as to the KB Home Agreement, which the Buyer will take by assignment, to the extent any such purchaser asserts an interest in the Property, including any lien under § 365(j) of the Bankruptcy Code, Debtor requests that such interest attach to the sale proceeds with the same validity, extent, and priority, if any, that it had against the Property, subject to all of Debtor's rights, claims, and defenses. The deposits under the Parcel Purchase Agreements are held by third-party escrow holders, and Debtor reserves all rights with respect to them. Any claim arising from the rejection of a Parcel Purchase Agreement will be treated as a prepetition claim under §§ 365(g) and 502(g) of the Bankruptcy Code.

## RELIEF REQUESTED

17. By this Motion, Debtor seeks an order substantially in the form attached as **Exhibit B** authorizing Debtor to sell the Property free and clear of all liens, claims, and encumbrances, with such liens attaching to the sale proceeds in order of priority and to take all actions necessary to consummate the transaction.

18. Following the closing of the sale, and after payment of all valid liens on the Property and all costs associated with the sale of the Property(the "**Net Sales Proceeds**"), the Debtor shall pay to American Savings Bank, National Association ("**ASB**"), upon application for and approval by the Court of such payment, which holds a DIP Superpriority Claim against the Debtor pursuant to the Court's *Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Doc. No. 111] (the "**DIP Order**").

## Basis for Relief

**A. The Sale is Authorized by § 363(b) and Represents Debtor's Sound Business Judgment.**

Debtor's decision to sell the Property constitutes a sound exercise of Debtor's business judgment. Section 363(b)(1) provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Apex Oil Co.*, 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

A debtor's showing of sound business judgment need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). The business judgment rule shields a debtor's management from judicial second-guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

The proposed sale to the Buyer is a private sale which is authorized by Bankruptcy Rule 6004(f)(1), which provides that a private sale of property may be made on terms other than those published or advertised. *See In Re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (holding that private sales are permissible under section 363(b) and Rule 6004(f)(1)).

The sale of the Property is in the best interests of Debtor's estate and its creditors. The Real Property and Intangibles are Debtor's primary assets, and the sale will generate funds sufficient to pay creditors. The purchase price of $19,113,421.62 represents fair market value based on Debtor's value of the Property. The BofA claim is substantially less than the Purchase Price. The sale will generate funds for distribution to unsecured creditors, whose claims total approximately $32,430,688. Should the sale not be approved, Debtor lacks the capital necessary to develop the Property and the estate would face continued carrying costs, potential foreclosure by BofA, and diminished value for all creditors. The Buyer is prepared to close the transaction expeditiously, and the transaction represents the best opportunity to maximize value for the benefit of the estate.

Debtor and the Buyer have negotiated at arm's-length and in good faith. The $19,113,421.62 Purchase Price represents fair and adequate consideration for the Real Property and Intangibles. The terms of the sale are reflected in the Agreement and are reasonable and appropriate given the condition, marketability, and expected use of the Property and Intangibles.

**B. The Buyer is Entitled to the Good Faith Purchaser Protections Under § 363(m).**

Pursuant to § 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019,

1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

The sale has been proposed in good faith, free of any fraud or misconduct, and for value and without knowledge of any adverse claim. *See Miami Ctr. L.P. v. Bank of N.Y.*, 838 B.R. 1547, 1554 (11th Cir. Fla. 1988). The Agreement was negotiated at arms' length, with both parties represented by their own counsel through extensive negotiations. Debtor submits that the Buyer's proposal as contained in the Agreement represents the Buyer's highest and best offer for the Property and Intangibles. Accordingly, the Buyer requires that the order approving the sale will include a provision that the Purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. Debtor believes that providing the Buyer with such protection will ensure that the maximum price will be received for the purchase and closing of the same will occur promptly.

**C. Section 363(f) Allows for a Sale Free and Clear of Liens and Encumbrances.**

BofA holds the first in priority interest in and to the Property and Intangibles with an asserted claim of $11,774,625.45 as of the Petition Date. It is the only party with a lien on the Property and Intangibles. BofA's lien shall attach to the sale proceeds in accordance with its priority.

Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all liens, claims, interests, and encumbrances with any such liens, claims, interests, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities as of the Petition Date. Section 363(f) authorizes a debtor to sell property of the estate free and clear of any interest in such property, if at least one of the following conditions is met: (1) applicable law permits the sale; (2) the entity consents; (3) the interest is a lien and the purchase price exceeds the amount of the

lien; (4) the entity could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of its interest; or (5) the sale price exceeds the value of the entity's interest and the entity is to receive the indubitable equivalent of its interest under a plan of reorganization. 11 U.S.C. § 363(f).

This sale satisfies the requirements of § 363(f) of the Bankruptcy Code. Debtor intends to pay all liens in full or to satisfy them from the sale proceeds in accordance with their priority. Any liens that are consensually agreed to be assumed by the Purchaser will be satisfied through the Purchaser's assumption of the underlying obligation or through payment from proceeds at closing. Moreover, even if such parties do not consent, the proposed sale satisfies § 363(f)(3) of the Bankruptcy Code because the Purchase Price represents the value of the Property. *In re Bay Circle Props., LLC, Case No. 15-58440-WLH*, 2017 WL 639769, *2 (Bankr. N.D. Ga. Feb. 14, 2017) (C.J., Hagenau). Section 363(f)(3) applies if the property is sold for its value as opposed to the face amount of the liens. If applicable, Debtor is prepared to demonstrate at the hearing that it has satisfied one or more of the prongs of § 363(f) to the extent any party objects to the relief sought in the Motion.

Pursuant to §§ 363(f)(2) and (f)(5), any lienholder that does not consent to the sale may be compelled to accept monetary satisfaction of its interest. The Purchase Price provides sufficient funds to satisfy BofA's lien in accordance with its priority.

All liens, claims, and encumbrances in and on the Property shall attach to the sale proceeds in accordance with the priority in which such liens exist as of the Petition Date. Debtor shall establish an account and hold the proceeds subject to further order of the Court, and the proceeds shall be distributed in accordance with the priorities set forth in the Bankruptcy Code.

Following the consummation of the sale, the Buyer will take title to and possession of the

Property free and clear of all liens, claims, and encumbrances except those expressly assumed. The Buyer shall not be liable for any obligations of Debtor relating to the Property other than those expressly assumed in the Agreement. The sale will eliminate successor liability concerns and enable the Buyer to hold the Real Property without the burden of pre-sale liabilities. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) bars successor liability claims).

**D. Distribution of the Remaining Sale Proceeds to ASB under the DIP Loan**

After payment of all valid liens on the Property and all costs associated with the sale of the Property from the proceeds of sale, upon application by ASB and the Court's approval of payment, the Debtor will pay the Net Sales Proceeds to ASB in order to reduce the Outstanding Balance of the DIP Loan. Paragraph 12 of the DIP Order granted ASB a superpriority claim against the Debtor and provides as follows:

> DIP Lender's Superpriority Claim. The DIP Lender is hereby granted allowed superpriority administrative expense claims (the "***DIP Superpriority Claims***") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtors' Chapter 11 Cases and in any successor case under the Bankruptcy Code (including any case under chapter 7 of the Bankruptcy Code, the "***Successor Case***") for all DIP Debt, having priority over any and all other administrative expenses of and unsecured claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds thereof. The DIP Superpriority Claims granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out.

*DIP Order*, p. 30.

The payment of the Net Sale Proceeds to the DIP Lender will allow the Debtor to further reduce the outstanding balance under the DIP Loan as defined in the DIP Order.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter the Order substantially in the form attached as **Exhibit B** authorizing Debtor to sell the Property and Intangibles to the Buyer free and clear of all liens, claims, and encumbrances and granting such other relief as the Court deems just and proper.

Dated: October 23, 2026

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
Attorneys for Debtor

**Exhibit A**
**Contract for Purchase and Sale of Real Property**

# PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Agreement**") is made by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**"). The last date of the signatory parties shall be the effective date hereof ("**Effective Date**"). This Agreement constitutes both an agreement between Buyer and Seller and joint escrow instructions to Escrow Holder with respect to the transaction contemplated hereby.

**WITNESSETH:**

For and in consideration of the mutual covenants and conditions herein, Seller and Buyer agree as follows:

**1.** **Property**. Seller hereby agrees to sell and Buyer hereby agrees to purchase (a) the real property and improvements thereon, approximately 63.14 acres, at the southwest intersection of Mosher Road and Grant Line Road in Elk Grove, California, APNs 134-0182-011-000 through 134-182-019-0000, more particularly described in Exhibit A attached hereto and made a part hereof, together with all easements, rights and appurtenances thereto ("**Real Property**"), and (b) all of right, title and interest in and to all development rights, approvals and entitlements in connection with the Real Property or the improvements, and all permits, licenses, plans, specifications, and certificates of completion related to the Real Property (collectively, the "**Intangibles**") (the Real Property and the Intangibles jointly constitute the "**Property**"), all in accordance with the terms and conditions hereinafter set forth. The Property constitutes a real estate development project commonly known as "Triangle Point 75" (the "**Project**").

**2.** **Purchase Price**. The purchase price of the Property shall be SEVENTEEN MILLION AND NO/100 DOLLARS ($17,000,000.00) ("**Purchase Price**"), payable as follows:

**2.1** Earnest Money. Within five (5) business days after the Effective Date, Buyer shall deliver to Escrow Holder (defined in Section 6.1) an earnest money deposit in the amount of TEN THOUSAND DOLLARS ($10,000.00) ("**Earnest Money**"), which shall be applied toward the Purchase Price. The Earnest Money shall be fully refundable to Buyer if Buyer terminates this Agreement on or before the expiration of the Title Review Period (defined in Section 4.2).

**2.2** Balance. The balance of the Purchase Price shall be payable in cash at the Closing (defined in Section 6.2). The balance of the Purchase Price in excess of the Earnest Money, plus Buyer's share of closing costs and pro-rations, shall be deposited by Buyer with Escrow Holder by wire transfer on or before the Closing Date.

**3. Due Diligence** .

**3.1** General. From the date Seller acquired title to the Real Property to and through the Effective Date of this Agreement, Buyer has served as a consultant to Seller, providing Seller with real estate development services for the Project, including cost projections, obtaining entitlements, due diligence coordination, design and construction coordination, contract negotiation, overall real estate planning and implementation and overseeing construction of infrastructure and other improvements to the Project. Buyer hereby acknowledges and represents that (a) Buyer is personally familiar with Project, (b) Buyer has had access to and has reviewed all of Seller's surveys, environmental reports, engineering reports on the Project, (c) Buyer has been responsible for obtaining all entitlements for the Project and working with the City for all approvals for, and inspections of the Project, (d) Buyer has had access to and reviewed all of the construction, engineering and /or architectural contracts related to the Project (collectively, "**Project Development Contracts**"), has been responsible for working directly with the service providers thereunder, and is aware of the status of the work remaining to be completed under all such contracts, as well as any outstanding balances due and owing under such contracts, and (e) Buyer has had access to and reviewed all of the purchase and sale agreements for end-buyers of various parcels in the Project (collectively, the "**Sale Contracts**"), has been responsible for working directly with the purchasers under such contracts, and is aware of the status of all such contracts.

**3.2** Acceptance of Condition of the Property. As a result of Buyer's familiarity with the Project summarized in Section 3.1, Buyer has completed all due diligence and feasibility investigations of the Property that Buyer deems appropriate to determine that the Property is suitable for its purposes and accepts the condition of the Property and the status of the Project

**4. Title**.

**4.1** Title Report. Within five (5) business days after the Effective Date, Seller shall cause the Escrow Holder to issue a preliminary title report on the Property ("**Title Report**") and deliver to Buyer the Title Report and legible copies of all exception documents identified therein.

**4.2** Title Review Period. Within five (5) business days after receipt of the Title Report, Buyer shall notify Seller of any objections Buyer has to any title exceptions. Buyer's failure to notify Seller of its disapproval of any title exception(s) within such period shall constitute Buyer's approval of the exceptions shown on the Title Report, provided in all events, Seller shall cause the debt in favor of Bank of America, N.A., secured by a deed of trust on the Real Property ("**BOA Debt**"), to be discharged or released at Closing. All title exceptions on the Title Report (except the BOA Debt) not objected to or subsequently accepted by Buyer shall be "**Permitted Exceptions**." If Buyer notifies Seller of any title objections, Seller shall have five (5) business days after receipt thereof to use reasonable efforts to remove the objectionable matters prior to Closing; if Seller is unable to remove all objectionable title exceptions, Buyer may (a) terminate this Agreement, or (b) waive such objections or obtain appropriate title insurance endorsements at Buyer's expense, and close the transaction (the foregoing process constitutes the "**Title Objection Process**"). The "**Title Review Period**" shall

commence upon Buyer's receipt of the Title Report and expire on the earlier to occur of (i) if Buyer fails to make any title objections, then five (5) business days after Buyer's receipt of the Title Report, or (ii) if Buyer makes any title objections, then on the date the Title Objection Process is completed.

**4.3** Title Policy. As a condition to closing, Escrow Holder shall be prepared to issue, upon closing, a standard coverage CLTA Owner's Policy of title insurance or, at Buyer's option and cost (as to the additional premium), an extended coverage ALTA Owner's Policy of title insurance, in the full amount of the Purchase Price, insuring that marketable fee simple title to the Property is vested in Buyer, subject only to the Permitted Exceptions ("**Title Policy**").

**4.4** Survey. Buyer, at Buyer's sole cost and expense, may elect to obtain an updated ALTA/ASCM survey of the Property certified to Buyer and Escrow Holder plotting all title exceptions set out in the Title Report to the extent plottable.

**5.** **Condition of the Property**. Buyer shall accept the condition of the Property "AS IS, WHERE IS" on the date of Closing. Upon Closing (except with respect to any breach by Seller of any of the representations and warranties set forth in this Agreement), Buyer waives its right to recover from Seller, and the members and managers, employees, agents, attorneys and contractors of Seller (collectively, **"Seller's Representatives"**), and hereby forever and unconditionally releases Seller and Seller's Representatives from, any and all damages, losses, liabilities, costs or expenses whatsoever (including attorneys' fees and costs) and claims therefor, whether direct or indirect, known or unknown, foreseen or unforeseen, which may arise on account of or in any way arising out of or connected with the condition of the Property. In connection with the release given in this Section 5, Buyer, after consultation with legal counsel, and with full knowledge of the consequences of its actions, hereby waives the provisions of California Civil Code section 1542, which provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

____________________
BUYER'S INITIALS

**6.** **Escrow and Closing**.

**6.1** Escrow Instructions. Escrow for this transaction shall be held at Stewart Title of California, 555 Capitol Mall, Suite 454, Sacramento, California 95814, Attn: Ruth Alexander, ph. (916) 256-1254, email ruth.alexander@stewart.com ("**Escrow Holder**"). When a copy of this fully executed Agreement has been delivered to Escrow Holder, it shall constitute

Escrow Holder's escrow instructions. Any standard form escrow instructions submitted by Escrow Holder or any other clarification or addition to the instructions contained here shall, when executed by Buyer and Seller, constitute additional escrow instructions. In the event of any conflict between such additional instructions and this Agreement, the terms of the Agreement shall prevail.

**6.2** Closing. This transaction shall close at the offices of Escrow Holder on or before January 31, 2026 (the "**Closing Date**" or "**Closing**"), provided Buyer may extend the Closing Date for up to ten (10) days if necessary to accommodate its intent to purchase the Property with the proceeds of a 1031 exchange. On or before the Closing, each of the parties shall deliver to the Escrow Holder such sums, instructions and documents as are required in Sections 6.5 and 6.6, or as customary in similar transactions in Sacramento County, California, and they shall do all other things reasonably necessary to close this transaction and carry out the purpose and intent of this Agreement.

**6.3** Possession and Risk of Loss. Possession of the Property shall be delivered to Buyer upon Closing. In the event all or any part of the Property is destroyed without fault of Buyer prior to the Closing or is taken by eminent domain or under other governmental authority, Seller shall not be entitled to enforce this Agreement and Buyer may elect to either (i) close without reduction in the Purchase Price, but with an assignment of all insurance or condemnation proceeds, or (ii) terminate this Agreement with a return of the Earnest Money, and neither party shall thereafter have any obligation or liability to the other party except for any liability arising under the license to enter.

**6.4** Prorations and Costs. All real property taxes on the Property shall be prorated as of the date of Closing. The premium for a CLTA title policy shall be paid by Seller. If Buyer elects to acquire an extended coverage ALTA title policy, Buyer shall pay the difference between a CLTA policy and an extended coverage ALTA policy, including any endorsements. All transfer fees, escrow fees, closing costs and recording costs shall be shared equally between the parties. Any other closing costs shall be shared by Seller and Buyer as is normal and customary in the Sacramento area. Each party shall be solely responsible for its respective legal fees and other advisory counsel fees.

**6.5** Seller's Deliveries in Escrow. At the Closing, Seller shall deliver in escrow to the Escrow Holder the following duly executed documents:

(a) a grant deed, in the recordable form customarily used by the Escrow Holder in Sacramento County, conveying good and marketable title to the Property, free and clear of all liens and encumbrances, except the Permitted Exceptions ("**Deed**"),

(b) a bill of sale, conveying or assigning the Intangibles to Buyer in the form attached as Exhibit B ("**Bill of Sale**"),

(c) an assignment and assumption of Project Development Contracts and Sale Contracts, in the form attached as Exhibit C ("**Assignment**"),

(d) a Foreign Investment in Real Property Tax Act Affidavit;

(e) a certification acceptable to Escrow Holder that Seller is exempt from the withholding provisions of the California Revenue and Taxation Code, as amended from time to time, and that neither Buyer nor Escrow Holder is required to withhold any amounts from the Purchase Price pursuant to such provisions,

(f) any disclosures and reports required by applicable State and local law in connection with the conveyance of real property,

(g) evidence of existence, organization, and authority of Seller and the authority of the person executing documents on behalf of Seller reasonably satisfactory to Escrow Holder, and

(h) any additional documents that Buyer or Escrow Holder may reasonably require for the proper consummation of this transaction (in form reasonably acceptable to Seller).

**6.6** Buyer's Deliveries in Escrow. At the Closing, Buyer shall deliver in escrow to Escrow Holder the following funds and duly executed documents:

(a) the balance of the Purchase Price, plus or minus applicable pro-rations, deposited with the Escrow Holder in immediate, same-day federal funds wired for credit into the Escrow Holder's escrow account,

(b) a counterpart of the Bill of Sale,

(c) a counterpart of the Assignment,

(d) evidence of existence, organization, and authority of Buyer and the authority of the person executing documents on behalf of Buyer reasonably satisfactory to Escrow Holder, and

(e) any additional documents that Seller or Escrow Holder may reasonably require for the proper consummation of this transaction (in form reasonably acceptable to Buyer).

**7. Representations and Warranties.**

**7.1** Seller's Representations and Warranties. Buyer's obligation to close this transaction is contingent upon the truth and correctness of the following matters unless at the Closing Buyer elects to waive the same. Seller represents and warrants to Buyer that:

(a) Authority. Seller is a duly organized and validly existing limited liability company in good standing in the State of California. Seller has the full right and authority and has obtained any and all consents required to enter into this Agreement, consummate or cause to be consummated the sale contemplated herein. The person signing this Agreement on behalf of Seller is authorized to do so. This Agreement has been, and the documents to be executed by Seller pursuant to this Agreement will be, authorized and properly

executed and will constitute the valid and binding obligations of Seller, enforceable against Seller in accordance with their terms.

(b) Conflicts and Pending Actions or Proceedings. Except as expressly stated herein, there is no agreement to which Seller is a party or, to Seller's knowledge, binding on Seller which is in conflict with this Agreement. There is no action or proceeding pending or, to Seller's actual knowledge, threatened against or relating to the Property, including, without limitation, any creditor or condemnation proceedings, or which challenges or impairs Seller's ability to execute or perform its obligations under this Agreement.

(c) Environmental. Except as otherwise set forth in the environmental reports referred to in Section 3.1, Seller has no knowledge of any violation of Environmental Laws (as defined below) related to the Property or the presence or release of Hazardous Materials on or from the Property. The term "**Environmental Laws**" includes without limitation, the Resource Conservation and Recovery Act and the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**") and other federal laws governing the environment as in effect on the date of this Agreement together with their implementing regulations and guidelines as of the date of this Agreement, and all state, regional, county, municipal and other local laws, regulations and ordinances that are equivalent or similar to the federal laws recited above or that purport to regulate Hazardous Materials (as defined below). The term "**Hazardous Materials**" includes petroleum as defined in CERCLA and any substance, material waste, pollutant or contaminant listed or defined as hazardous or toxic under any Environmental Law.

**7.2** Buyer's Representations and Warranties. Seller's obligation to close this transaction is contingent upon the truth and correctness of the following matters unless at the Closing Seller elects to waive the same. Buyer represents and warrants to Seller that:

(a) Organization and Authority. Buyer has the full right and authority and has obtained any and all consents required to enter into this Agreement, consummate or cause to be consummated the sale. This Agreement and all of the documents to be delivered by Buyer at the Closing have been and will be authorized and properly executed and will constitute the valid and binding obligations of Buyer, enforceable in accordance with their terms.

(b) Conflicts and Pending Action. There is no agreement to which Buyer is a party or to Buyer's actual knowledge binding on Buyer which is in conflict with this Agreement. There is no action or proceeding pending or to Buyer's knowledge, threatened, against Buyer which challengers or impairs Buyer's ability to execute or perform its obligations under this Agreement.

(c) OFAC Compliance. Buyer warrants that it is in compliance with all laws, statutes, rules and regulations or any federal, state or local governmental authority in the United States of America applicable to it and all beneficial owners of it, including, without limitation, the requirements of Executive Order No. 133224, 66 Fed Reg. 49079 (September 25, 2001) (the **"Order"**) and other similar requirements contained in the rules and regulations of the Office of Foreign Asset Control of the Department of the Treasury (**"OFAC"**) and in any enabling legislation or other Executive Orders in respect thereof (the Order and such other rules,

regulations, legislation or orders are collectively called the **"Orders"**). Neither Buyer nor any beneficial owner of Buyer (with "beneficial owner" excluding the stockholders of any publicly traded corporation): (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "**Lists**"); (ii) has been determined by competent authority to be subject to the prohibitions contained in the Orders; (iii) is owned or controlled by, nor acts for or on behalf of, any person or entity on the Lists or any other person or entity who has been determined by competent authority to be subject to the prohibitions contained in the Orders; or (iv) shall transfer or permit the transfer of any interest in Buyer or any beneficial owner in it to any person who is or whose beneficial owners are listed on the Lists.

**7.3** Effective Date of Representations and Warranties. Except as expressly stated otherwise herein, the representations and warranties set forth in this Section 7 are made as of the Effective Date of this Agreement and are remade as of the date of Closing.

**8. Default; Liquidated Damages.**

**8.1** Default. In the event of any default hereunder by Seller, Buyer shall have the right to either cancel this Agreement or to enforce this Agreement by an action for specific performance. In the event of cancellation by Buyer due to Seller's breach, the Earnest Money shall be immediately returned to Buyer without further instruction from Seller.

**8.2** Liquidated Damages. IN THE EVENT OF ANY DEFAULT HEREUNDER BY THE BUYER, SELLER MAY CANCEL THIS AGREEMENT BY NOTICE TO BUYER AND THE ESCROW HOLDER. IN THE EVENT OF SUCH CANCELLATION, THE EARNEST MONEY PAID BY THE BUYER SHALL BE DEEMED LIQUIDATED DAMAGES. SELLER'S REMEDY HEREUNDER SHALL BE LIMITED TO SUCH PAYMENT, IT BEING EXPRESSLY AGREED THAT SELLER SHALL HAVE NO RIGHT TO ANY OTHER RELIEF FROM BUYER. BUYER AND SELLER AGREE THAT THE AMOUNT OF LIQUIDATED DAMAGES ESTABLISHED HEREIN IS A REASONABLE, PRESENT ESTIMATE OF WHAT SELLER'S DAMAGES WOULD BE IN THE EVENT OF A DEFAULT BY BUYER.

INITIALED BY SELLER BW    INITIALED BY BUYER ____

**9. Miscellaneous.**

**9.1** Assignment/Parties Bound. Seller may assign this Agreement without Buyer's prior written consent. Buyer may assign this Agreement to a related entity owned or controlled by Buyer without Seller's consent. Except for the foregoing, Buyer may not assign this Agreement without Seller's prior written consent, which consent shall not be unreasonably withheld. This Agreement shall be binding upon and inure to the benefit of the respective legal representatives, successors, assigns, heirs, and devisees of the parties. No assignment shall relieve the assignor of any obligation under this Agreement whether arising before or after such assignment.

**9.2** Headings. The section and paragraph headings of this Agreement are for convenience only and in no way limit or enlarge the scope or meaning of the language hereof.

**9.3** Invalidity and Waiver. If any portion of this Agreement is held invalid or inoperative, then so far as is reasonable and possible the remainder of this Agreement shall be deemed valid and operative, and effect shall be given to the intent manifested by the portion held invalid or inoperative. The failure by either party to enforce against the other any term or provision of this Agreement shall be deemed not to be a waiver of such party's right to enforce against the other party the same or any other such term or provision.

**9.4** Governing Law. This Agreement and said other instruments shall, in all respects, be governed, construed, applied, and enforced in accordance with the law of the State of California. Venue for any action to enforce this Agreement shall be in the State Superior Court in Sacramento County, California.

**9.5** Survival. Except as otherwise specified herein, provisions of this Agreement that contemplate performance after the Closing and the obligations of the parties not fully performed at the Closing shall survive the Closing and shall not be deemed to be merged into or waived by the instruments of closing.

**9.6** No Third Party Beneficiary. This Agreement is not intended to give or confer any benefits, rights, privileges, claims, actions or remedies to any person or entity as a third party beneficiary, decree, or otherwise.

**9.7** Entirety and Amendments. This Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings relating to the Property. This Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

**9.8** Time. Time is of the essence in the performance of this Agreement.

**9.9** Attorneys' Fees. Should either party employ attorneys to enforce any of the provisions hereof, the prevailing party shall be entitled to all reasonable costs, charges and expenses, including attorneys' fees, expended or incurred in connection therewith.

**9.10** Notices. All notices required or permitted hereunder shall be in writing and shall be served on the parties at the following address:

If to Seller:

MP Elk Grove LLC
1801 Tiburon Blvd., Suite 800
Tiburon, California 94920
Mansfield, OH 44903
Attn: Gary Pinkston

If to Buyer: Kamilos Companies, LLC
11249 Gold Country Blvd., Suite 190
Gold River, California 95670
Attn: Gerry Kamilos

Any such notices shall be either: (a) sent by certified mail, return receipt requested, in which case notice shall be deemed delivered three business days after deposit, postage prepaid in the U.S. Mail; (b) sent by overnight delivery using a nationally recognized overnight courier, in which case it shall be deemed delivered one business day after deposit with such courier; or (c) sent by personal delivery. The above addresses may be changed by written notice to the other parties; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.

**9.11** Construction. The parties acknowledge that the parties and their counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

**9.12** Calculation of Time Periods. Unless otherwise specified, in computing any period of time described herein, the day of the act or event after which the designed period of time begins to run is not to be included and the last day of the period so computed is to be included, unless such last day is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday, or legal holiday.

**9.13** Further Assurances. In addition to the acts and deeds recited herein and contemplated to be performed, executed and/or delivered by Seller to Buyer at Closing, Seller and Buyer agree to perform, execute and make available, but without any obligation to incur any additional liability or expense, on or after the closing any further information and assurances as may be reasonably necessary to consummate the transactions contemplated hereby or to further perfect the conveyance, transfer and assignment of the Property to Buyer.

**9.14** Commissions. The parties represent to each other that they have not used the services of any real estate broker or person who may claim a commission or finder's fee against Seller's proceeds with respect to this transaction, and each agrees to indemnify, defend and hold the other harmless from broker compensation claims arising from the indemnifying party.

**9.15** Confidentiality. The parties will keep all information regarding this transaction confidential, including the terms and name of both parties, until after the Closing.

**9.16** Entire Agreement. This Agreement contains the entire agreement between the parties hereto and supersedes any and all prior agreements, arrangements or understandings regarding the same subject matter as to this Agreement, which are null and void.

**9.17** Written Amendments. This Agreement may not be modified, amended, altered or changed in any respect whatsoever except by further agreement in writing, duly executed by both parties. No oral statements or representations subsequent to the execution

hereof by either party are binding on the other party, and neither party shall have the right to rely on such oral statements or representations.

**9.18** No Recordation. Neither this Agreement nor any notice thereof shall be recorded.

**9.19** 1031 Tax Deferred Exchange. Buyer or Seller may wish to use the Property as a part of a 1031 tax deferred exchange of property with a third party. If Buyer or Seller has in good faith entered into an agreement for such exchange, then Buyer or Seller shall have the right to assign its interest in this Agreement to the third party participating in such exchange. If Buyer or Seller assigns its interest in this Agreement to effectuate a tax deferred exchange as aforesaid, then said party shall promptly so notify the other party and shall deliver to other party, a copy of the relevant assignment or assignments. Either party shall thereafter cooperate with reasonable requests to effectuate such tax deferred exchange. The exchanging party shall pay any additional transfer taxes, recording fees or similar closing costs resulting from such tax deferred exchange. Buyer and Seller hereby agree to indemnify, defend and save the other party harmless from and against any additional claims or liabilities arising as a result of participation in such tax deferred exchange. Any assignee under this section shall be bound by the provisions of this Agreement.

**9.20** Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement via facsimile transmission or electronic mail shall be as effective as delivery of an executed original.

MADE EFFECTIVE the last date of a signatory party below.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 1/6/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By:______________________________
Gerry Kamilos, Manager

Date:____________________________

hereof by either party are binding on the other party, and neither party shall have the right to rely on such oral statements or representations.

**9.18** No Recordation. Neither this Agreement nor any notice thereof shall be recorded.

**9.19** 1031 Tax Deferred Exchange. Buyer or Seller may wish to use the Property as a part of a 1031 tax deferred exchange of property with a third party. If Buyer or Seller has in good faith entered into an agreement for such exchange, then Buyer or Seller shall have the right to assign its interest in this Agreement to the third party participating in such exchange. If Buyer or Seller assigns its interest in this Agreement to effectuate a tax deferred exchange as aforesaid, then said party shall promptly so notify the other party and shall deliver to other party, a copy of the relevant assignment or assignments. Either party shall thereafter cooperate with reasonable requests to effectuate such tax deferred exchange. The exchanging party shall pay any additional transfer taxes, recording fees or similar closing costs resulting from such tax deferred exchange. Buyer and Seller hereby agree to indemnify, defend and save the other party harmless from and against any additional claims or liabilities arising as a result of participation in such tax deferred exchange. Any assignee under this section shall be bound by the provisions of this Agreement.

**9.20** Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement via facsimile transmission or electronic mail shall be as effective as delivery of an executed original.

MADE EFFECTIVE the last date of a signatory party below.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By:______________________________
Gary L. Pinkston, President

Date:______________________________

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: January 9, 2026



47565.0007.4919-4511-5780.1

The undersigned Escrow Holder joins in this Agreement for purposes of agreeing to the instructions to Escrow Holder set forth herein.

**Escrow Holder:**

Stewart Title Company of California

By: ______________________________

Date______________________________

# EXHIBIT A

Legal Description

Parcels 1, 2, 3, 4, 5, 6, 7, 8 and 9, as shown on the Parcel Map No. 13-057, “Triangle Point 75”, filed for record June 29, 2023, in Book 252 of Parcel Maps, at Page 8, Sacramento County Records, California.

Excepting from all of the above described lands, all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, as reserved in the deed dated June 12, 1944, recorded July 11, 1944, in Book 1076 of Official Records, page 250, executed by Capital Company (formerly California Lands, Inc., successor by merger to Capital Company) to John Rohrer and Emma Rohrer, his wife, as joint tenants, without however any right of ingress and egress, easements and other rights to use or occupy surface of such lands above the depth of three hundred (300) feet below the surface for the purpose of exploring, mining, or drilling for oil, gas or other substances which right has been granted back to the fee owner of the herein above property as set forth by that certain instrument entitled “Conveyance and Agreement Concerning Mineral Related Surface Use Rights”, recorded February 1, 2007, Book 20070201, page 482, of Official Records.

APNs: 134-0182-011-000 through 134-182-019-0000

# EXHIBIT B

## BILL OF SALE AND GENERAL ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, MP Elk Grove LLC, a California limited liability company ("**Assignor**"), and Kamilos Companies, LLC, a California limited liability company, its designee or assignee ("**Assignee**"), hereby agree as follows:

1. Background & Effective Date. This Bill of Sale and General Assignment (this "**Bill of Sale**") is being delivered pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated as of _____________ ___, 2025 (the "**PSA**"), and shall be effective as of the Closing Date under the PSA ("**Effective Date**"). The PSA provides for the sale of certain real property located in Sacramento County, California, as legally described on Exhibit A attached hereto (the "**Real Property**"). Capitalized terms not otherwise defined in this Bill of Sale will have the meanings given them in the PSA.

2. Assignment. Assignor hereby sells, transfers, assigns and conveys to Assignee, and Assignee hereby accepts and assumes, all of Assignor's interest in and to all tangible personal property owned by Seller that is used in the ownership and development of the Real Property, to the extent assignable, including, but not limited to, the following: (a) any and all development rights and credits; (b) all engineering and surveying reports, plans, plats, surveys, drawings, specifications, studies and related materials, development and marketing information and materials and other information pertaining to the Real Property; (c) all permits, licenses, applications, approvals, and any other authorizations issued by governmental entities or quasi-governmental entities pertaining exclusively to the Real Property; and (d) all entitlements, development agreements and other agreements exclusively pertaining to the entitlement and/or development of the Real Property (collectively, the "**Assigned Property**").

3. Representations. Assignor represents and warrants to Assignee that Assignor has not previously assigned, conveyed or transferred any interest whatsoever in the Assigned Property. Except as specifically set forth above, Assignor makes no other representation or warranty of any kind in connection with the Assigned Property.

4. Severability. If any one or more of the provisions of this Bill of Sale, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Bill of Sale and all other applications of any such provision shall not be affected thereby.

5. Further Assurances. In addition to this Bill of Sale, Assignor and Assignee agree to execute and deliver after the closing any and all such further, reasonable documents as may be reasonably necessary to consummate the transaction contemplated herein.

6. Miscellaneous. This Bill of Sale shall inure to the benefit, and be binding upon, each of the parties hereto and their respective successors and assigns. This Bill of Sale and

the rights and obligations of the parties hereunder are to be governed by and construed and interpreted in accordance with the laws of the State of California, without regard to choice or conflict of laws rules. This Bill of Sale may be executed in any number of counterparts and by each of the parties hereto in separate counterparts, all such counterparts together constituting but one and the same agreement.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Bill of Sale as of the Effective Date.

**ASSIGNOR**:

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By:_____________________________
Gary L. Pinkston, President

**ASSIGNEE**:

**Kamilos Companies, LLC,**
**a California limited liability company**

By:________________________________
Gerry Kamilos, Manager

Exhibit A – Legal Description of Real Property

# EXHIBIT C

## ASSIGNMENT AND ASSUMPTION OF CONTRACTS

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, MP Elk Grove LLC, a California limited liability company ("**Assignor**"), and Kamilos Companies, LLC, a California limited liability company, its designee or assignee ("**Assignee**"), hereby agree as follows:

1. Background & Effective Date. This Assignment and Assumption of Contracts (this "**Assignment**") is being delivered pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated as of ____________ ___, 2025 (the "**PSA**"), and shall be effective as of the Closing Date under the PSA ("**Effective Date**"). The PSA provides for the sale of certain real property located in Sacramento County, California, as legally described on Exhibit A attached hereto (the "**Real Property**"). Capitalized terms not otherwise defined in this Bill of Sale will have the meanings given them in the PSA.

2. Assignment. Assignor hereby assigns and conveys to Assignee all of Assignor's right, title and interest in and to the Project Development Contracts listed in Exhibit B attached hereto and the Sales Contracts listed in Exhibit C attached hereto (collectively, the "**Contracts**"), and Assignee hereby accepts and assumes all of Assignor's rights and obligations under the Contracts and agrees to indemnify, defend and hold Assignor harmless from all liabilities arising under the Contracts, whether arising before or after the Effective Date hereof, including any outstanding sums owed by Assignor thereunder.

3. Representations. Assignor represents and warrants to Assignee that Assignor has not previously assigned, conveyed or transferred any interest whatsoever in the Contracts. Except as specifically stated in the foregoing, Assignor makes no other representation or warranty of any kind in connection with the Contracts.

4. Severability. If any one or more of the provisions of Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provision shall not be affected thereby.

5. Further Assurances. In addition to this Assignment, Assignor and Assignee agree to execute and deliver after the closing any and all such further, reasonable documents as may be reasonably necessary to consummate the transaction contemplated herein, including approvals from the service providers under the Project Development Contracts, if necessary.

6. Miscellaneous. This Assignment shall inure to the benefit, and be binding upon, each of the parties hereto and their respective successors and assigns. This Assignment and the rights and obligations of the parties hereunder are to be governed by and construed and interpreted in accordance with the laws of the State of California, without regard to choice or conflict of laws rules. This Assignment may be executed in any number of counterparts and by

each of the parties hereto in separate counterparts, all such counterparts together constituting but one and the same agreement.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the Effective Date.

**ASSIGNOR:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By:______________________________
Gary L. Pinkston, President

Date:______________________________

**ASSIGNEE:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By:______________________________
Gerry Kamilos, Manager

Date:______________________________

Exhibit A – Legal Description of Real Property

Exhibit B – List of Project Development Contracts

Exhibit C – List of Sales Contracts

# FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of January 23, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026 ("**Agreement**'), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to modify the Purchase Price and Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

1. **Purchase Price**. The "Purchase Price" set forth in Section 2 of the Agreement is hereby increased to NINETEEN MILLION ONE HUNDRED THIRTEEN THOUSAND FOUR HUNDRED TWENTY-ONE and 62/100 DOLLARS ($19,113,421.62).

2. **Closing Date**. The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to February 16, 2026.

3. **Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 1/26/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: 1-26-2026



47565.0007.4924-8087-3866.1

# SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of February 13, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026 (jointly, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1.** **Closing Date**. The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to March 6, 2026.

**2.** **Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 2/13/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: February 13, 2026



47565.0007.4899-4587-5343.1

# THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of March 2, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, and the Second Amendment dated February 13, 2026 (jointly, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1. Closing Date.** The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to March 20, 2026.

**2. Miscellaneous.** Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 3/2/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: [signature: Gerry Kamilos]
Gerry Kamilos, Manager

Date: March 2, 2026

# FOURTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS FOURTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (“**Amendment**”) is dated as of March 17, 2026 (“**Effective Date**”), by and between MP ELK GROVE LLC, a California limited liability company (“**Seller**”), and KAMILOS COMPANIES, LLC, a California limited liability company (“**Buyer**”).

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, the Second Amendment dated February 13, 2026, and the Third Amendment dated March 2, 2026 (jointly, the “**Agreement**”), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1.** **Closing Date**. The “Closing Date” set forth in Section 6.2 of the Agreement is hereby postponed to April 15, 2026.

**2.** **Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 3/17/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: March 18, 2026



47565.0007.4899-4587-5343.1

# FIFTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS FIFTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of April 13, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026 and Fourth Amendment dated March 17, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1. Closing Date.** The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to April 23, 2026.

**2. Miscellaneous.** Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

| **SELLER:** | **BUYER:** |
|---|---|
| **MP Elk Grove LLC,**<br>**a California limited liability company** | **Kamilos Companies, LLC,**<br>**a California limited liability company** |
| By: MP Financial Group, Ltd.,<br>a Nevada corporation,<br>Its Manager | By: *Gerry Kamilos*<br>Gerry Kamilos, Manager |
| By: *[signature]*<br>Gary L. Pinkston, President | Date: April 13, 2026 |
| Date: 4-14-26 | |



47565.0007.4909-8018-8833.1

# SIXTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS SIXTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of April 20, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026, Fourth Amendment dated March 17, 2026, and Fifth Amendment dated April 13, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1. Closing Date**. The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to May 8, 2026.

**2. Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 4-20-26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: April 20, 2026



47565.0007.4901-3192-0547.1

# SEVENTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS SEVENTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is dated as of May 7, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026, Fourth Amendment dated March 17, 2026, Fifth Amendment dated April 13, 2026, and Sixth Amendment dated April 20, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1. Closing Date**. The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to May 29, 2026.

**2. Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 5-7-26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: May 7, 2026



47565.0007.4938-7173-5209.1

**EIGHTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**

THIS EIGHTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is made effective retroactively to May 29, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

**RECITALS:**

WHEREAS, pursuant to that certain Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026, Fourth Amendment dated March 17, 2026, Fifth Amendment dated April 13, 2026, Sixth Amendment dated April 20, 2026 and Seventh Amendment dated May 7, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to further extend the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1.** **Closing Date**. The "Closing Date" set forth in Section 6.2 of the Agreement is hereby postponed to on or before October 23, 2026.

**2.** **Commissions**. Notwithstanding anything to the contrary, Seller shall pay a real estate broker's commission to MP Financial Group, Ltd. of three percent (3%) of the Purchase Price out of escrow at the Closing.

**3.** **Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 7/29/26

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: July 29, 2026



47565.0007.4899-6844-4093.2

**NINTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**

THIS NINTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is made effective September 4, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

**RECITALS:**

WHEREAS, pursuant to that certain original Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026, Fourth Amendment dated March 17, 2026, Fifth Amendment dated April 13, 2026, Sixth Amendment dated April 20, 2026, Seventh Amendment dated May 7, 2026 and Eighth Amendment with an effective date of Mary 29, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to account for increased development costs and other changes of circumstances, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1.** **Purchase Price**. The Purchase Price set forth in the First Amendment is hereby reduced from $19,113,421.62 to $16,113,421.62.

**2.** **Assignment of Sale Contracts**. Notwithstanding anything in the Agreement to the contrary, the "Sale Contracts" to be assigned to Buyer at the closing shall consist solely of the Agreement of Purchase and Sale and Joint Escrow Instructions between MP Elk Grove LLC, as seller, and KB Home Sacramento Inc., as buyer, for Parcel 8, dated August 10, 2023, as amended from time to time.

**3.** **Commission**. The commission to be paid to MP Financial Group, Ltd. at the Closing, as set forth in the Eighth Amendment, is hereby increased from 3% of the Purchase Price to 6% of the Purchase Price, resulting in a commission of $966,805.30.

**4.** **Miscellaneous**. Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

[signatures on following page]

MADE EFFECTIVE the date first set forth above.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By:______________________________
Gary L. Pinkston, President

Date:_________________________________

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By:_________________________________
Gerry Kamilos, Manager

Date:_______________________________

# TENTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS TENTH AMENDMENT TO PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Amendment**") is made effective October 20, 2026 ("**Effective Date**"), by and between MP ELK GROVE LLC, a California limited liability company ("**Seller**"), and KAMILOS COMPANIES, LLC, a California limited liability company ("**Buyer**").

## RECITALS:

WHEREAS, pursuant to that certain original Purchase and Sale Agreement and Joint Escrow Instructions dated January 9, 2026, as amended by that certain First Amendment dated January 23, 2026, Second Amendment dated February 13, 2026, Third Amendment dated March 2, 2026, Fourth Amendment dated March 17, 2026, Fifth Amendment dated April 13, 2026, Sixth Amendment dated April 20, 2026, Seventh Amendment dated May 7, 2026, Eighth Amendment with an effective date of May 29, 2026, and Ninth Amendment with an effective date of September 4, 2026 (collectively, the "**Agreement**"), Seller has agreed to sell to Buyer the Property more particularly described therein, upon the terms and conditions set forth therein; and

WHEREAS, the parties desire to amend the Agreement to postpone the Closing Date, as set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties, the parties hereby agree as follows:

**1. Closing Date.** The "Closing Date" set forth in the Eighth Amendment is hereby postponed to on or before December 30, 2026.

**2. Miscellaneous.** Except as modified by this Amendment, the Agreement remains unchanged and in full force and effect.

MADE EFFECTIVE the date first set forth above.

**SELLER:**

**MP Elk Grove LLC,**
**a California limited liability company**

By: MP Financial Group, Ltd.,
a Nevada corporation,
Its Manager

By: [signature]
Gary L. Pinkston, President

Date: 10-20-2026

**BUYER:**

**Kamilos Companies, LLC,**
**a California limited liability company**

By: Gerry Kamilos
Gerry Kamilos, Manager

Date: 10-21-2026



47565.0007.4926-4103-8810.1

EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**WAIKOLOA VILLAGE LOFTS WEST, LLC., *ET AL.*,**<br><br>**DEBTORS.**[3] | **CASE NO. 26-20761-JRS**<br><br>**CHAPTER 11**<br><br>**WAIPAHU PROPERTIES, LLC**<br>**WAIPAHU, LLC**<br>**WILLOW PLAZA, LLC**<br><br>**JOINTLY ADMINISTERED** |

**ORDER GRANTING MOTION FOR ORDER (A) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF**

This matter came before the Court on November 17, 2026 at 10:30 a.m. for hearing on the Motion of MP Elk Grove, LLC ("**Debtor**") for Order Authorizing the Sale of Certain Assets Free and Clear of All Liens, Claims, and Encumbrances (the "**Motion**"). Notice of the Motion was served upon the United States Trustee, Debtor's twenty largest unsecured creditors, all parties identified in the applicable schedules of Debtor, and those parties requesting notice of the Motion. The Court has reviewed the Motion, the materials supporting the Motion, and all other papers submitted by the parties. The Court finds the following:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

[3] The non-operating Debtors are **5425 PAU A LAKA, LLC, FLETCHER K, LLC, GARY L. PINKSTON, HAWAII REAL ESTATE DEVELOPMENT, LLC, KUKUIULA VISTAS, LLC, MP ELK GROVE, LLC, MP ELKO II, LLC, MP KAUAI HH DEVELOPMENT FUND, LLC, MP KAUAI QOZ FUND, LLC, MP MODESTO, LLC, TC CLOVIS, LLC, THE GARY & JANICE PINKSTON FAMILY TRUST, WAIKOLOA VILLAGE HOTEL CWS, LLC, WAIKOLOA VILLAGE HOTEL HIE, LLC,** and **WAIKOLOA VILLAGE LOFTS SOUTH, LLC.**

1. Jurisdiction and Venue. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor consents to entry of final judgment.

2. Statutory Predicates. The statutory predicates for relief requested in the Motion exist pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Rules 6004, 6006, 7052, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure.

3. Notice. Debtor has given proper, timely, and adequate notice of the Motion and the relief requested therein in accordance with the Federal Rules of Bankruptcy Procedure and the applicable local rules.

4. Opportunity to Object. All parties in interest have had an adequate opportunity to object to or be heard with respect to the Motion.

5. Sale in Best Interests. The sale of the Real Property and Intangibles is in the best interests of Debtor's estate, its creditors, and all parties in interest.

6. Business Justification. Debtor has satisfied the business judgment test for approval of the sale under Section 363(b). Debtor has articulated a valid business justification for the sale as described in the Motion and supporting materials, and the sale represents a sound exercise of Debtor's business judgment.

7. Arm's Length Transaction. The transaction between Debtor and the Buyer is an arm's-length transaction entered into in good faith between independent parties without fraud, collusion, or unfair dealing.

8. Good Faith Purchaser. The Buyer is a good-faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code. The Buyer has negotiated for the purchase of the Property

and Intangibles in good faith, are not insiders of Debtor (as defined in the Bankruptcy Code), and are purchasing the assets for its own account and benefit.

9. Sale Free and Clear. The sale of the Property free and clear of all liens, claims, and encumbrances is authorized under Section 363(f) of the Bankruptcy Code. The Purchase Price is adequate to satisfy all liens in accordance with their priority, and any senior lienholder shall receive payment in full from the sale proceeds.

10. Cure and Adequate Assurance. The Buyer has demonstrated adequate assurance of future performance.

11. Prompt Consummation. Debtor shall consummate the sale expeditiously and shall take all actions reasonably necessary to affect the transaction.

12. Buyer Not an Insider and No Successor Liability. The Buyer is not an insider of Debtor as defined in Section 101 of the Bankruptcy Code. The Buyer shall not be deemed a successor to Debtor for any purpose, and accordingly, the Buyer shall not be liable for any pre-closing obligations of Debtor relating to the Property and Intangibles, except those expressly assumed in the Agreement.

13. Valid Transfer. The sale of the Property to the Buyer constitutes a valid, binding, and authorized transfer of all right, title, and interest in and to the Property and Intangibles.

14. Agreement Not Modified. The terms and conditions of the Agreement are not modified by this Order, and the Agreement shall remain in full force and effect.

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED:**

**APPROVAL OF SALE**

A. The Motion is GRANTED. Debtor is authorized and directed to execute and deliver the Agreement to consummate the sale of the Real Property and the Intangibles in accordance with the terms and conditions of the Agreement.

B. All objections to the Motion are overruled.

C. The Agreement is approved in all respects, and Debtor is authorized to take all actions contemplated thereby or necessary to effectuate the transaction, including the execution and delivery of all Agreements, certificates, and other documents required in connection with the sale.

**SALE AND TRANSFER OF ASSETS FREE AND CLEAR**

D. Debtor is authorized to sell the Property to the Buyer, and such sale is hereby approved pursuant to Section 363(b) and 363(f) of the Bankruptcy Code.

E. Debtor is authorized to transfer, convey, assign, and deliver to the Buyer all of Debtor's right, title, and interest in and to the Real Property and the Intangibles.

F. The sale of the Property and Intangibles shall be consummated free and clear of all liens, claims, encumbrances, and interests of any kind or character, whether known or unknown, whether arising under federal, state, or local law, whether arising by operation of law or otherwise (collectively, the "**Encumbrances**"), except for such Encumbrances as are expressly assumed by the Buyer in writing in the Agreement.

G. All Encumbrances shall attach to the net proceeds of the sale in accordance with the priorities in which such Encumbrances exist as of the Petition Date. Debtor shall establish and maintain an escrow or segregated account to hold the sale proceeds, and such proceeds shall be applied to satisfy Encumbrances in accordance with their priority and applicable law.

H. The Buyer shall receive the Property with all of the rights, title, and interest of Debtor therein, free and clear of any lien or encumbrance, except as expressly assumed.

I. Any entity in possession of any portion of the Property shall, upon the Debtor's request and at the Debtor's expense, immediately surrender possession thereof to the Buyer.

J. All parties are barred and enjoined from asserting any claim against the Buyer with respect to the Property or any pre-closing operations or obligations of the Debtor, except as expressly assumed in the Agreement.

K. All creditors and lienholders whose claims are subject to satisfaction from the sale proceeds shall execute and deliver to the Debtor and the Buyer all necessary releases, UCC-3 termination statements, and other instruments of discharge.

L. The transfer of the Property to the Buyer pursuant to this Order and the Agreement shall constitute a valid and effective transfer of all right, title, and interest therein, and shall vest in the Buyer all such right, title, and interest as of the date of closing, free and clear of all Encumbrances except as assumed.

**PURCHASE PRICE AND DISTRIBUTION**

M. The Buyer shall pay the Purchase Price of $16,113,421.23 as set forth in the Agreement. The Purchase Price shall be applied first to satisfy the lien of BofA and then all other Encumbrances in accordance with their priority, and the balance shall be held pending further order of the Court or distribution in accordance with a confirmed plan of reorganization.

**NO SUCCESSOR LIABILITY**

N. The Buyer shall not be liable for any of Debtor's prepetition liabilities, including unpaid taxes, environmental liabilities, or any other liabilities or claims arising from or relating to

Debtor's pre-closing operation or ownership of the Property, except to the extent expressly assumed in the Agreement.

O. No successor liability shall attach to the Buyer except with respect to those obligations expressly assumed in the Agreement.

**GOOD FAITH PURCHASER PROTECTIONS**

P. The Buyer is good-faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and shall be afforded all of the protections thereof. Any reversal or modification of this Order on appeal shall not affect the validity of the sale or the Buyer's rights hereunder unless such Order is stayed pending appeal.

**ADDITIONAL PROVISIONS**

Q. Debtor is authorized to take all actions and execute all documents as may be reasonably necessary or appropriate to effectuate the sale, including the execution of conveyances, deeds, assignment and assumption Agreements, and other instruments of transfer.

R. This Order shall be final and binding upon Debtor, the Buyer, and all creditors and parties in interest. The terms of this Order shall survive the closing and the completion of the sale transaction.

**### END OF ORDER ###**

**Prepared and presented by:**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*
Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
Attorneys for Debtor